The case for argument is 22-1992, International Development Solutions v. Secretary of State. Mr. Prince, please proceed. Good morning. May it please the Court? Appellant and its corporate family provided essential security services in highly dangerous locations for the United States, as well as for commercial entities and other entities around the world. In this case, they were providing those services for the United States and Afghanistan. They were assessed tens of millions of dollars in taxes by the government of Afghanistan. When you say they, I mean this case has a corporate structure that has multiple layers and we need to be precise because I think it matters. When you say they were assessed, who did the Afghani government assess taxes on? The Afghani government assessed taxes on Academy, LLC on revenues that were earned by the subsidiaries. The Academies were, the taxes were assessed and charged to and paid by Academy, the parent corporation. They were and they were paid by Academy in order to continue performing the contracts that IDS held. It is, if they hadn't paid those tax assessments, they would have lost their business licenses which permitted them to continue providing armed security services in Afghanistan. So they were paid by the parent Academy, LLC due to the revenues earned by IDS and in order to continue permitting the appellant here, IDS, to perform these contracts. How does that entitle IDS, the contractor, to reimbursement of taxes it paid as a contractor? It doesn't, your honor. It entitles IDS to recovery of the amounts that were paid on its behalf and that were debited from its accounts by its corporate parents, Academy, LLC. Okay, you say the taxes were debited from IDS's accounts. Where in the record is there evidence that the parent charged taxes to IDS and the IDS paid taxes, paid out of its revenue accounts back to the parent? The record with the testimony of Mr. DeAnker established that that was the process by which the parents would be dealing with the assets, the revenues earned by IDS after 2012. I thought the testimony was just generally that this was a zero revenue account, whatever that means, and that everything IDS got from the government was just transferred. That doesn't suggest to me that there was a specific charge from the parent to IDS for these taxes paid on your behalf and IDS designated a portion of its revenue to compensate the parent for those taxes. So Judge Hughes, I think it's important to bear in mind that after 2012, IDS essentially existed only as a name to receive contract revenues here. That is, all of its assets, including its contracts, were transferred to the parent. Well, you say that, but when IDS tried to novade and the government refused, you said, or at least the board made a finding, and it seems like there's support, that IDS was a company with employees that could still perform the contract. The government's denial of the novation request expressly states that the government didn't see a need to novate because Academy LLC was continuing to provide all the resources necessary for IDS to perform. You mean Academy or do you mean ATCI? What the government's novation request denial stated was Academy LLC, and that is because in the government's understanding over the many years of performance, ATCI, Academy, and IDS were essentially interchangeable. At least after ATCI purchased the interest of whatever that other company is. Was that other company related too? No. Casement was not a related company. IDS was originally truly a joint venture, and so it had to operate in its name with the government. And if it was still a joint venture and the parent somehow paid the taxes, we'd be definitely in a different story, right? In that situation, we would be, yes. But in this case, what we're talking about is effectively a shell entity at most where and we presented a few different frameworks to view this. The assets had transferred to the parent which had incurred costs on behalf, ostensibly on behalf of the contractor, but in reality was the contractor by operation of law. That operation of law stuff is different. Let's assume I disagree with you that IDS somehow because of a merger or something like that essentially became either ATCI or Academy. I don't think those cases you cite are on all fours as this one. Why isn't it correct to say that IDS didn't pay these taxes and wasn't charged these taxes? I mean, if you have a similar structure and a parent decides to pay taxes, it could do so for any number of reasons, right? It could decide, well, we're going to pay the taxes because maybe tax benefits accrue to us differently than if they accrued specifically to the actual subsidiary. That's certainly possible in the realm. I'm not a tax expert. We don't get very many tax cases, but that's certainly possible, right, that a parent might say, well, we're going to use the tax liability of a subsidiary to offset our tax liability in another area. It's theoretically possible, but what happened here is that the taxes were assessed on the parent specifically because it was the entity holding the permits, permitting operation. So it was leveraging. I guess my problem is you have very little documentary evidence to suggest any of this. And again, we're on a substantial evidence review, and there's some testimony about the general ways of operation. I didn't see anything. The best I got was the parent paid these taxes out of an account attributable to ATCI. But that still doesn't get you back to IDS as the contractor. Well, Your Honor, it gets us back to IDS through a few different mechanisms. I think the cleanest, in my view, is the operation of law argument. But if Your Honor doesn't buy that, the alternatives are still there. A course of dealing over the six years and hundreds of millions of dollars of payments under these contracts, where the state refers in its internal documents and its testimony at trial to IDS and Academy interchangeably. It seemed to view these entities interchangeably because, in fact, the course of conduct, course of dealings of the parties established that IDS effectively ceased existing as an entity in anything but name in 2012. It was to continue- I'm talking about different employees getting paid and working, and they all designate them as IDS employees. Well, the defense contract audit agency, in its report that's in the appendix, notes that Academy had X number of employees over the various years. I just want to say one thing. As a matter of law, Academy wasn't the contractor, right? Academy, I will say, was not the contractor. Neither was ATCI. That depends on your construction of the operation of law doctrine. Well, the government specifically disagreed with the innovation request to change from IDS to ATCI. That has to mean something as a matter of law. We are not sure why the government did that, but an assumption by operation of law is a means by which the parties go around the innovation process. As you have the anti-assignment acts that prohibit assignment of government contracts, exceptions are in the events of a waiver expressed through innovation or through conduct or by operation of law, where effectively the government is continuing the contract with another party with the same resources in effectively the same position. Our contention is that's what happened here. This is another party. The documentary evidence belies that because it suggests, at least for the innovation, that they would still be dealing with IDS. They were still dealing with IDS on paper, and we were happy to accede to the government's desire here and not push the point because it was of no moment where the government was accepting performance being rendered by the parent entities in any case, accepting invoices and paying invoices for that performance without question. It only really seemed to become an issue at the board long after the party's course of handling pre-dispute established that the government believed that they were standing, Academy LLC and ATCI were standing in the shoes of IDS. How do we know that IDS was the actual taxpayer here? All you have is this general theory that everything that came in from IDS got sent all the way up to the parent and that the parent paid these taxes, but the parent could have paid these taxes out of some other pool of money that it had. It could have done that, and it wouldn't make IDS the taxpayer. It makes those costs IDS cost of performance because either they were pulled from a pool that belonged to ATCI, it says in the record. Don't they have to be the taxpayer? They don't have to be the taxpayer. They have to be a cost of performance that is attributable and incurred by the company here, the contractor here. And they became a cost of performance through one of the frameworks, any of the three frameworks in the stadium. Maybe this hypothetically, let's get rid of this notion that they're a shell company and let's just start with the notion that they're still a legitimate operating subsidiary. The government of Afghanistan goes to, I'm going to get this wrong, that IDF gets a tax bill and decides not to pay it. And the parent decides, well, we're going to use money from a separate revenue pool voluntarily to pay it even though we're not obligated to pay your tax bill because of whatever the different corporate structure is. Because parents aren't always liable for the taxes of their subsidiaries, right? They're not. In this case, you say they were, but let's just assume they're not. If in that scenario you had an independent subsidiary that's apart from the parent company and the subsidiary was the one that was liable for the taxes, they declined to pay. And the parent, out of an interest in continuing good relationships with the taxing entity said, we're not liable, but we'll nonetheless pay. Can those costs, those tax costs be contributed or assessed? Can that separate subsidiary then get a reimbursement for those tax costs? I think it would depend on the circumstances. And if they were like the circumstances here. Well, try to follow the hypothetical I gave you as best as possible. I know it was meandering. So if the circumstances were such that the taxing entity was simply saying, we think you must pay this. And the tax entity said, no, we think not. That is different than the circumstances where the taxing entity says, you must pay this or you will be removed from the country and default on your obligations under your contracts, which is what happened here. They told the parent that we will not renew your permits that would continue to permit you to operate in the country, providing armed security services to State Department assets unless these taxes are paid. And they said initially several hundred million dollars would have to be paid. After years of negotiation, that was brought down to a $30 million range. Ultimately, if that wasn't paid, the State Department's internal documents note that would have caused State Department assets to go unprotected. Would you like to save the remainder of your time for rebuttal? I would, Your Honor. Very good. Mr. Stodd, please proceed. Good morning, Your Honor, and may it please the Court. Is it just a matter of form over function? I mean, clearly if the Afghanistan government had sent a tax bill to IDS, and IDS had sent a tax check to the government, assuming that they're reasonable and allocable and all that kind of stuff, they could have recovered those tax costs, right? In that scenario, Judge Hughes, yes. The contractor would have clear evidence of it having incurred a cost under the contract. There may be other issues of allowability as to whether those costs were reasonable and things like that. Sure, sure. But in current, I don't believe it would be an issue. As a matter of the cost reimbursement provision, and that applies here, I don't know what the specific one is. But if the contractor incurs taxes that are covered by that cost reimbursement clause, they can seek them from the government as additional costs. Yes, Your Honor, and to note for the Court, there is a question in this record as to what the contract line item number X-404, which the Board found to be ambiguous, actually means it would entitle IDS to be entitled to. Okay, but those are all questions. Those are all ancillary issues. So what's wrong with the argument that the record here shows that the taxes that the parent paid were solely attributable to the performance of IDS under this contract? And therefore, they were IDS's obligations to pay, and it's just the nature of the way the Afghani government was seeking the payment of these taxes that made the parent pay them rather than IDS. Your Honor, at base, the problem with that factual assertion is that it's unsupported in the record. It is IDS's contention, and this goes to the second basis for the Board denying entitlement in this case, and that is the allocability portion of the Board's opinion. Why was the government against novation? Your Honor, the government's denial of novation is documented in a letter from the contracting officer explaining that the government understood IDS to continue to be a going concern, and with the support of Academy LLC, would continue to perform its obligations under the contract, and thus, the government directed IDS to do that. That is the evidence that we have in the record as to the reason why, and it's clear evidence in that denial letter that the government had issued to IDS shortly after requesting novation in May of 2012. Can I get back to what I was asking you about? I want to talk about allocability. I want to talk about just the legal burden of this because, again, it gets back to whether this was form or function to me. You say there's no evidence in the record that these tax costs that were paid, and let's just assume there are actual tax costs paid by Academy to the Afghan government. I don't want to argue about that, and the record evidence seems to show, and maybe this is where you say it's disputed, but it seems to show to me that Academy had three different types of contracts. They had commercial contracts that they paid the taxes for, they had Defense Department contracts that were exempt, and they had the State Department contracts, which, unless I'm mistaken, only covered these contracts, and they limited their claims for tax refunds to the period when only these two clans could possibly have been at issue anymore. There was no dispute, and that's my reading of the record, is there's no dispute that the taxes paid by Academy to the Afghan government were only for the revenues from these two clans. Your Honor, that is a disputed fact in the record, and the primary dispute boils down to IDS claims that the testimony of Mr. Inayat Qasimi, who was a lawyer engaged by Constellus Holdings in 2016 to negotiate taxes with the Afghan government, IDS claims that Mr. Qasimi testified before the Board that the monies at issue relate exclusively, that being a quote, to IDS's performance or incurrence of costs under this contract. And did the Board disagree? The Board weighed that testimony, and Mr. Qasimi found it not to go as far as IDS had alleged that it did. The Board found that Mr. Qasimi actually did not testify that those monies relate exclusively to any contract in particular at all, whereas Mr. Qasimi had... Where is the substantial evidence for that conclusion? Mr. Qasimi's testimony that we're talking about here is primarily on Appendix 8592. Yeah, but why did the Board reject that testimony? Did he testify live? The Board didn't reject Mr. Qasimi's testimony. The Board assessed Mr. Qasimi's testimony and found it not to go as far as IDS had contended that it did, and that whereas IDS, again, had contended before the Board, citing to Mr. Qasimi's testimony that these monies relate exclusively to these State Department contracts, these... Did WPS contract them in two task orders? Okay, but before we dive into this, can I get you to answer a hypothetical question? Let's assume, because I see where we're getting into a problem. Let's assume that the facts show that the monies paid did exclusively relate to these task orders. There's no dispute that the only revenue that's being taxed here is IDS's performance under these two claims, and that the only payments made by Academy to the Afghani government were for taxes associated with this revenue. No factual disputes about allocability or anything. And so the only question is, did the fact that the parent paid them, even though they were entirely attributable to the revenue of the subsidiary, does that legally make a difference? Or under those facts, where there's no dispute at all about the amount, where it came from, and that it was attributable to a government contract, would, in those circumstances, IDS be allowed to get recovery under the cost reimbursement claim? Your Honor, if we leave aside allocability and focus on incurrence... Well, my allocability argument is suggesting a hypothetical, which is that it is undisputed that they are entirely allocable to these two claims. Correct. And Your Honor is focusing on the fact, then, that the parent company is the one that actually paid the taxes in the case. And whether the parent company's payment is dispositive of IDS's ability to be able to get reimbursement from the government, I think our answer to that is no, if IDS can show that IDS, the contractor, this is a Contract Disputes Act case, the contractor is the one that actually ultimately incurred the cost that it seeks for reimbursement from the government. In this case... Wait, wait, wait. Let me stop there. Because I feel, maybe I didn't make that explicit in my hypothetical, but I think it was clear that when the Afghani government was billing Academy, they were billing them for underpayment of taxes attributable solely to these two claims. Is that not enough, then, for them to get reimbursement? No, Your Honor, because that doesn't establish that the parent company, Academy LLC, the taxpayer, ever actually, as Your Honor noted before with Mr. Prince, ever actually then charged IDS the cost. But what about the suggestion that this is a $0 account, and so everything that IDS earns is turned over? Is it your view that that's not enough to show that there was a specific payment from IDS up? Because it's all just being money sent up, and Academy can determine how to allocate that money whatsoever, whatever way it wants. The testimony in the record, Your Honor, as to IDS's funds received from the government, IDS billing the government in IDS's own name, receiving money from the government in IDS's own name, IDS then sweeping that money, or Academy LLC or Concelis Holdings LLC, another parent in the chain, sweeping those monies up to one of those parents, Academy LLC, the record suggests, doesn't mean that Academy charged IDS for the tax payments at issue in this case. There's no showing of how those monies relate to each other, and the board weighed the testimony in the case and found that... I just want to get this clear. Your view is that, and again, we're speaking hypothetically, the fact that the government of Afghanistan went to Academy and said, you owe taxes on this underlying government contract that your subsidiary IDS has with the United States. That's not enough to show that IDS incurred those charges. It was the parent that incurred those charges. Correct, Your Honor. What would it have taken for the parent to pass those charges on? Because, again, is this a question of they have made corporate structure, and if they want to pass on costs, they have to show in their corporate structure, but also in their account keeping, which under most government contracts, they're required to keep records, that Academy then transmitted some kind of separate bill or invoice or however you would keep chart and say, these are your responsibility, ISD, and noted that they had specifically been incurred by ISD. If that had happened, let me ask it that way. If that had happened, if all these other facts in this hypothetical we're talking about were true, and when the Afghanistan government said to Academy, you're going to lose your licenses if you don't pay taxes on this contract, and Academy had then sent a bill to IDS saying, you're liable for these taxes, they will be paid out of the revenues you're getting under the contract, and you should seek reimbursement from the government, would that be enough? If there were a bill in this record, Your Honor, from Academy LLC, the taxpayer, down to IDS, saying IDS, you owe as a matter of intercorporate fund transfer these monies, that obligation then may have been established, such that IDS could be considered to have incurred the cost. The problem in this case is the board found that there is no sufficient connection to Academy's payment to Afghanistan to make them something that's a debt of IDS, and that there's no substantial evidence for that conclusion. Correct. Correct. Anything further? I believe, unless the court has further questions, I can conclude. Okay. Mr. Prince, you have some rebuttal time. Thank you. Thank you, Your Honor. Can we just pick up where I left off, just to cut to the chase? I find this case very, very difficult and troubling in terms of just how to approach it, but let's just say I'm approaching it that way, that this is the board made a finding that there's insufficient evidence to show that IDS ever incurred these taxes, because there is no documentary evidence to show that Academy linked these specific payments to IDS. I know you want to make your operational audit argument, but I can look at that myself. I don't want to talk about that. If the only linkage is between Academy and, at best, ATCI, and the board even found that that may not be indicative of who's the taxpayer, that Academy was the taxpayer here, and there's no other specific evidence that these taxes were incurred by IDS, why is that not substantial evidence? In this case, these were taxes that had to be paid for performance. They were paid by the entity that they were assessed against, Academy LLC, in order to permit the continued performance of IDS's contract. You can call that a subcontract relationship, because they were providing services necessary for performance of the contract. That might be the right paradigm to look at this from in any case, because Academy LLC was in reality performing this contract. In any event, they were costs that were incurred by the corporate parent exclusively to the account of the subsidiary to permit that subsidiary to continue performing. The problem I have is the first part seems correct and supported by the evidence that they were costs accrued by the parent, but that doesn't get you tax reimbursement under a government contract with the subsidiary, right? Well, it does if they were considered to be a cost of the subsidiary. That's the problem, is where is the evidence to show that the taxes accrued and paid by the parent were ever attributed to IDS? That comes in a few ways. First, through the testimony that I alluded to at the outset that establishes that this was an entity that had zero-sum accounts. Monies were taken directly to the parents and then debited from the parents' accounts. That is a cost of the entity that is IDS, because its monies are being kept by the parent and the parent is taking monies out of that account. On the other hand, you could look at this as a subcontractor relationship where it's a cost... Wait, I want to make sure that I'm being precise about this. You're out of time, but let me just ask it. When you say that monies are being debited out of an account, you don't mean out of an account that has an IDS name on it, though. It doesn't have an IDS name on it, but it was maintained for IDS. Okay. I thank both counsel. The case is taken under submission.